UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASCENT HOSPITALITY MANAGEMENT CO., LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:20-cv-770-GMB |
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, *et al.*, | ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Ascent Hospitality Management Co., LLC ("Ascent") filed its complaint alleging breach of contract and related torts against Defendants Employers Insurance Company of Wausau ("Wausau") and Liberty Mutual Insurance Company ("LMIC"). Doc. 17. LMIC has filed a motion to dismiss all counts alleged against it. Doc. 26. Wausau filed its own motion to dismiss Counts IV and V. Doc. 27. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 19. The motions are fully briefed and ripe for decision. Docs. 26, 27, 37, 38, 40 & 41. For the following reasons, the motions are due to be granted in part and denied in part.

### **I. STANDARD OF REVIEW**

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice, *Iqbal*, 556 U.S. at 678.

## II.  FACTUAL BACKGROUND

This case centers on an insurance policy. Doc. 17 at 6. LMIC's broker marketed the policy to Ascent. Doc. 17 at 6. Based on LMIC's representations as to the terms of the proposed policy, Ascent believed that LMIC would be providing insurance coverage under the policy either alone or in combination with other insurers. Doc. 17 at 6. Ascent relied on those representations when it agreed to the policy. Doc. 17 at 6.

The policy language also caused Ascent to believe that LMIC issued the policy, either alone or in combination with Wausau. Doc. 17 at 7.  The policy states that Wausau is the "Company Providing Insurance," Doc. 17 at 6, but the name "Liberty Mutual Insurance" appears on page headers and footers throughout the policy document. *See, e.g.*, Doc. 17-1 at 2.  The policy also lists "Company Contact Information" for "Liberty Mutual Insurance." Doc. 17 at 7; 17-1 at 4.  And David H. Long, who serves as the president of both Wausau and LMIC, signed the policy. Docs. 17 at 7 & 17-1 at 5.

The policy provides broad coverage for losses unless the cause of the loss is expressly excluded. Doc. 17 at 8.  Specifically, the policy covers losses sustained by Ascent due to the interruption of its business, civil or military orders that prohibit access to covered locations, and the prevention of ingress or egress from covered locations. Doc. 17 at 9.  The policy does not exclude losses from pandemics or government shutdowns due to the threat of a viral pandemic. Doc. 17 at 8.  It also does not exclude losses caused by viruses. Doc. 17 at 8.  Its contamination exclusion is vague, ambiguous, and does not apply to Ascent's claim. Doc. 17 at 8.

In March 2020, the World Health Organization declared the COVID-19 virus to be a global pandemic. Doc. 17 at 9.  COVID-19 is a virus that can survive on surfaces for at least 17 hours. Doc. 17 at 9–10.  The characteristics of COVID-19 render property exposed to the virus potentially unsafe and dangerous. Doc. 17 at

10.  Therefore, the presence or threatened presence of COVID-19 makes property unusable and constitutes direct physical property loss or damage. Doc. 17 at 10.  In response to the pandemic, all five states in which Ascent owns hotels or restaurants issued "Stay-at-Home" or "Shelter-in-Place" orders substantially limiting or completely prohibiting the operation of Ascent's businesses. Doc. 17 at 10.  As a result of these closure orders, Ascent has suffered covered losses expected to exceed $40 million. Doc. 17 at 11.

In March 2020, Ascent submitted a claim to the defendants requesting coverage for its business interruption losses. Doc. 17 at 11.  The defendants assigned Ascent a claim number and a claims adjuster employed by LMIC. Doc. 17 at 11.  Less than 48 hours after the initial notification of a claim, the claims adjuster issued a Reservation of Rights Letter, which identified potential exclusions and previewed an anticipated denial of the claim. Doc. 17 at 12.  At that point, the defendants had not materially investigated the claim. Doc. 17 at 12.  The LMIC claims adjuster signed the letter and used "Liberty Mutual Insurance" letterhead. Doc. 17-2 at 2.  The letter included a phone number for questions, and the voicemail message at that number thanked callers for contacting "Liberty Mutual Commercial Insurance Claims." Doc. 17 at 12.  The letter also indicated that "we" are investigating the claim, apparently referencing LMIC and Wausau. Doc. 17 at 12.

In April 2020, the defendants issued a denial letter. Doc. 17 at 13.  The LMIC

claims adjuster also signed this letter and used "Liberty Mutual Insurance" letterhead. Doc. 17-3 at 2 & 6. The denial letter included a phone number, and the voicemail message at that number referred to "Liberty Mutual Insurance." Doc. 17 at 13. The letter again used the pronoun "we," likely referring to both LMIC and Wausau. Doc. 17 at 13. Based on these interactions and letters, LMIC appeared to be handling the claim and to be responsible for the denial either in whole or in part. Doc. 17 at 13.

## III. DISCUSSION

Ascent brings claims for breach of contract, bad faith, fraudulent misrepresentation, and fraudulent suppression. Doc. 17 at 15–23.[1] LMIC seeks to dismiss all claims against it, Doc. 26 at 15, while Wausau argues for the dismissal of only the fraud claims. Doc. 27 at 1. The court addresses each of the pending claims in turn.

**A.  Breach of Contract**

As an initial matter, the policy states that "[t]he validity and interpretation of this Policy shall be governed by . . . the laws of the State of New York." Doc. 17-1 at 13. Alabama law recognizes and generally enforces choice-of-law provisions in

---

[1] Ascent also seeks a declaratory judgment that its losses from COVID-19 are covered by the policy and that the defendants must pay the full amount of past and future losses related to the COVID-19 pandemic. Doc. 17 at 14–15. LMIC argues that this court cannot issue a declaratory judgment if the breach of contract claim fails. Doc. 26 at 6. Because the court concludes that Ascent has not stated a claim for breach of contract, LMIC's motion to dismiss Count I for declaratory judgment is due to be granted.

a contract. *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). Therefore, the court will apply New York law when construing Ascent's insurance policy. Regardless, a breach of contract claim has the same basic elements in both Alabama and New York: (1) an agreement between the parties, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages resulting from that breach. *See St. Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). Ascent alleges (1) that it had an insurance policy issued by both defendants, (2) that it performed under the contract by complying with all applicable provisions and paying premiums, (3) that the defendants breached the contract by denying coverage for its business losses, and (4) that it has suffered damages resulting from the defendants' failure to cover these losses. Doc. 17 at 15–16.

LMIC contests only the first element and argues that it was not a party to the contract with Ascent. Doc. 26 at 6. As LMIC points out, the policy identifies Wausau as the "Company Providing Insurance." Doc. 17-1 at 5. "Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

Under New York law, the use of a parent company's letterhead does not make that company a party to its subsidiary's contract. *Am. Real Est. Holdings Ltd. P'ship v. Citibank, N.A., et al.*, 844 N.Y.S.2d 288, 289 (N.Y. App. Div. 2007).  In *American Real Estate Holdings*, the plaintiff leased property to Citibank. *Id.*  Citibank's correspondence with the plaintiff used the letterhead of Citibank's parent corporation. *Id.*  But the court granted the parent company's motion to dismiss, finding that it was not a party to the lease because the letters specifically referenced Citibank and defined the contracting party as Citibank. *Id.*

Similarly, Ascent's allegations that LMIC was a party to the contract are implausible in the face of the clear language of the policy.  Ascent's authority to the contrary is nonbinding and distinguishable from the facts of this case.  Relying on *Watkins Motor Lines, Incorporated v. Crum and Forster Insurance Company*, 2006 WL 3328287 (M.D. Fla. Nov. 15, 2006), Ascent argues that the contract is ambiguous as to whether LMIC is a contracting party because the name "Liberty Mutual" appears on nearly every page of the policy in headers, footers, and logos. Doc. 38 at 9–11.  But the *Watkins* policy never defined the insurer's identity. *Watkins*, 2006 WL 3328287, at *6.  Ascent's policy designates Wausau as the company providing insurance, Doc. 17-1 at 5, and nowhere refers to the entity "Liberty Mutual Insurance Company."

Ascent also relies on a pair of opinions for the proposition that a parent

7

company becomes a party to its subsidiary's contract when it takes over the claim handling process from the subsidiary. *See McCarty v. Liberty Mut. Ins. Co.*, 2016 WL 8290131, at *5 (D. Wyo. Feb. 10, 2016); *Derocher v. Zurich Am. Ins. Co.*, 2008 WL 4671754, at *4 (M.D. Pa. Oct. 16, 2008). Ascent has not alleged, however, that LMIC and Wausau share a parent-subsidiary relationship, since the complaint identifies them as sister companies both wholly owned by Liberty Mutual Group, Inc. Doc. 17 at 5.

For these reasons, the court finds that Ascent's pleadings, which incorporate the policy,[2] unambiguously show that LMIC is not a party to the contract. Therefore, LMIC's motion to dismiss Count II of the amended complaint is due to be granted.

**B.    Bad Faith**

Both LMIC's and Ascent's arguments relating to the bad faith claim turn on whether LMIC is a party to the insurance contract. Docs. 26 at 7 & 38 at 17. Georgia law governs the bad faith claim because the denial letters were mailed to Ascent's headquarters in Georgia. *See* Docs. 17-2 at 2 & 17-3 at 2; *Morse v. Life Ins. Co. of N. Am.*, 399 F. Supp. 3d 1236, 1245–46 (N.D. Ala. 2019) (finding under Alabama law that the law of the state where the denial letters were mailed governs a bad faith

---

[2] Federal Rule of Civil Procedure 10(c) provides that an exhibit attached to a pleading becomes "a part of the pleading for all purposes." *See Griffin Indus., Inc.*, 496 F.3d at 1206 (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). Ascent attached the policy to its Amended Complaint. Doc. 17-1.

claim). Under Georgia law, only the insurer can be liable for bad faith refusal to pay an insurance claim. Ga. Code Ann. § 33-4-6. Because the court finds that Ascent has not plausibly alleged that LMIC is a party to the insurance contract, LMIC's motion to dismiss Count III of the amended complaint is due to be granted.

**C.     Fraudulent Misrepresentation**

A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1347 (M.D. Ala. 1998). Alabama courts "apply the law of the state where the injury occurred." *Id.* (citing *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)). When applying this rule to fraud claims, the place where the injury occurred is "the state in which the plaintiff suffered the economic impact." *Id.* Ascent is a Georgia limited liability company with its principal place of business in Georgia. Doc. 17 at 4. Therefore, Georgia is where it would have experienced the financial effect of the defendants' alleged fraud. *See In re Verilink Corp.*, 405 B.R. 356, 365 (Bkr. N.D. Ala. 2009) (finding that a company suffers financial harm in the state where its "primary assets and headquarters" are located). All parties rely on Georgia law for their arguments relating to Ascent's fraud claims. *See* Docs. 26 at 10, 27 at 3, 37 at 5–6 & 38 at 19. For these reasons, this court will look to Georgia law in analyzing Ascent's fraud claims.

Under Georgia law, the tort of fraudulent misrepresentation has five elements:

9

(1) the defendant made false representations; (2) the defendant knew the representations were false at the time they were made; (3) the defendant made the representations intending to deceive the plaintiff and induce him to act; (4) the plaintiff justifiably relied upon the representations; and (5) the misrepresentations resulted in damages. *Clemons v. Delta Airlines, Inc.*, 790 S.E.2d 814, 817 (Ga. Ct. App. 2016). However, under Georgia law, a "misrepresentation of the law is ordinarily not actionable." *Saye v. UnumProvident Corp.*, 2006 WL 2850432, at *3 (N.D. Ga. Oct. 2, 2006). "A misrepresentation is one of law rather than fact where 'the truth of the representations would depend upon the legal effect of the policy provisions.'" *Id.* (quoting *Seckinger-Lee Co. v. Allstate Ins. Co.*, 32 F. Supp. 2d 1348, 1353 (N.D. Ga. 1998)).

The majority of the fraudulent misrepresentations alleged in the complaint concern the scope of the policy. *See* Doc. 17 at 17. These representations are not actionable under Georgia law in as much as they relate solely to the extent of the coverage under the terms of the policy and therefore are, at most, misrepresentations of law. *See Saye*, 2006 WL 2850432, at *3 (granting motion to dismiss when defendant gave "allegedly erroneous advice" about what the policy would cover at the time it was purchased). However, Ascent alleges one misrepresentation that does not concern the legal effect of the policy: "Should Plaintiff need to make a claim for such losses, Defendants would promptly pay such a claim in accordance with the

10

Policy." Doc. 17 at 18.  The court finds that this statement is a representation of fact and therefore that it could be an actionable misrepresentation.

LMIC and Wausau also argue that Ascent's fraud claims fail to meet Federal Rule of Civil Procedure 9(b)'s particularity requirement. Docs. 26 at 13 & 27 at 4. Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud."  The purpose of the rule is to alert defendants to the "precise misconduct with which they are charged." *Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations omitted).  The rule is satisfied if the complaint sets forth (1) what statement was made, (2) the time and place of the statement and the person who made it, (3) the content of the statement and how it misled the plaintiff, and (4) what the defendant obtained from the fraud. *Id.* (internal citations omitted).  But these requirements may be relaxed somewhat when "this factual information is peculiarly within the defendant's knowledge or control." *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990).

Ascent pleads its fraudulent misrepresentation claim with sufficient particularity.  The amended complaint describes a specific actionable misleading statement, alleges that an LMIC employee made the statement at the time Ascent initially procured the policy or when it was renewed for the purpose of inducing Ascent to purchase the policy, and alleges that the defendants never intended to fulfil

11

their obligations under the policy. Doc. 17 at 18–19.  Ascent also alleges that the LMIC employee acted on behalf of LMIC, Wausau, or both entities. Doc. 17 at 18. In light of Ascent's allegation that LMIC performs the day-to-day operations of Wausau (Doc. 17 at 5), the court may reasonably infer that the relevant LMIC employee acted on behalf of LMIC and Wausau when making the misrepresentation. Ascent has not alleged the identity of the employee who made the misrepresentation but argues that it cannot do so because only LMIC has access to that information. Doc. 37 at 10.  Together, these allegations are enough to put the defendants on notice of the precise misconduct at issue.

Finally, Ascent argues for the first time in its reply brief that its fraudulent misrepresentation claim against LMIC has an alternative basis if LMIC succeeds in showing that it was not a party to the policy. Doc. 38 at 20.  In that case, Ascent would argue that LMIC made false representations that it would provide insurance coverage when it ultimately did not do so. Doc. 38 at 20.  But Count IV of Ascent's amended complaint does not include this claim in its list of misrepresentations. Doc. 17 at 17.  The amended complaint refers to this representation elsewhere but does not describe it as false. Doc. 17 at 6.  Quite the opposite—Ascent alleges throughout its complaint that LMIC is one of the companies providing coverage.  If Ascent wishes to allege in the alternative that LMIC falsely represented that it would be one of the companies providing coverage, it must seek leave to amend its complaint to

12

do so. *See Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1309 n.6 (N.D. Ala. 2019).

Ascent has plausibly alleged one factual misrepresentation made by an LMIC employee on behalf of LMIC and Wausau. Therefore, the defendants' motions to dismiss Count IV are due to be denied as to this misrepresentation, but granted as to the remaining alleged misrepresentations.

**D. Fraudulent Suppression**

"Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ga. Code Ann. § 23-2-53; *Fanelli v. BMC Software, Inc.*, 2013 WL 12190241, at *10 (N.D. Ga. July 29, 2013) (quoting *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1167 (11th Cir. 1997)). "Georgia law is very clear that no confidential or fiduciary relationship exists between an insured and the insurer and its agents." *Seckinger-Lee Co.*, 32 F. Supp. 2d at 1354 (citing *St. Farm Fire & Cas. Co. v. Fordham*, 250 S.E.2d 843, 845 (Ga. Ct. App. 1978)); *Willis v. Allstate Ins. Co.*, 740 S.E.2d 413, 417 (Ga. Ct. App. 2013).

Ascent alleges that "Defendants had a duty to disclose to Plaintiff the facts set forth above," but does not identify the basis for that duty. *See* Doc. 17 at 21. The bare allegation of a duty to disclose is implausible without any showing of a

confidential relationship or particular circumstances. *See* Ga. Code Ann. § 23-2-53. An insurer and insured do not share a confidential relationship. *See Seckinger-Lee Co.*, 32 F. Supp. 2d at 1354. Ascent argues that particular circumstances exist because an LMIC employee made certain representations that the defendants never intended to fulfill. Doc. 38 at 18. However, reliance on representations made by an insurer's employee does not satisfy the particular-circumstances test under Georgia law. *See id.* at 1355. Ascent has not identified any other basis for particular circumstances in the amended complaint, and therefore has not plausibly alleged facts supporting a duty to disclose. The defendants' motions to dismiss Count V are due to be granted.

## IV.  CONCLUSION

For these reasons, it is ORDERED as follows:

(1) The defendants' Motions to Dismiss (Docs. 26 & 27) are GRANTED in part and DENIED in part. All of the plaintiff's claims against LMIC are DISMISSED with prejudice, except for the claim that LMIC fraudulently misrepresented that it would promptly pay claims under the policy. The plaintiff's claims against Wausau for Fraudulent Misrepresentation (Count IV) and Fraudulent Suppression (Count V) are DISMISSED with prejudice, except for the claim that Wausau fraudulently misrepresented that it would promptly pay claims under the policy.

(2) LMIC shall serve any outstanding discovery responses on counsel for Ascent on or before **February 16, 2021.**

DONE and ORDERED on January 26, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE