UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASCENT HOSPITALITY MANAGEMENT CO., LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EMPLOYERS INSURANCE COMPANY OF WAUSAU, *et al.*, )<br>)<br>Defendants. ) | Case No. 2:20-cv-770-GMB |

# MEMORANDUM OPINION

Before the court is the Motion for Judgment on the Pleadings (Doc. 51) filed by Defendants Employers Insurance Company of Wausau ("Wausau") and Liberty Mutual Insurance Company ("Liberty"). The motion has been fully briefed and is ripe for decision. *See* Docs. 51–53 & 65–68. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 19. For the following reasons, the motion is due to be granted.

## I. STANDARD OF REVIEW

The same standards govern a Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). In considering these motions, the court must "take the factual allegations in the complaint as true and construe them in the light most

favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive the pleading stage, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice, *Iqbal*, 556 U.S. at 678.

## II.  FACTUAL BACKGROUND

According to the Amended Complaint, Plaintiff Ascent Hospitality Management Co., LLC ("Ascent") operates hotels and restaurants throughout the states of Alabama, Georgia, Tennessee, Mississippi, and Indiana. Doc. 17 at 1. Ascent purchased an "all-risks" insurance policy from Wausau that provides broad coverage for losses sustained due to the interruption of Ascent's business operations, civil or military orders that prohibit access to covered locations, and the prevention

of ingress or egress from covered locations.[1] Doc. 17 at 9. The policy requires "direct physical loss or damage" to trigger coverage for any type of loss. *See* Doc. 17-1 at 10, 42, 44–45 & 47. The policy also contains a contamination exclusion: "We do not cover the following unless directly resulting from a covered loss: Contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." Doc. 17-1 at 27. The policy defines "contamination" as "[a]ny condition of property that results from a contaminant" and in turn defines "contaminant" as "[a]ny foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." Doc. 17-1 at 64.

In March 2020, the World Health Organization declared COVID-19 to be a global pandemic. Doc. 17 at 9. COVID-19 is a virus that can survive on surfaces for at least 17 hours. Doc. 17 at 9–10. The characteristics of COVID-19 render property exposed to the virus potentially unsafe and dangerous. Doc. 17 at 10. Therefore, the presence or threatened presence of COVID-19 makes property unusable. Doc. 17 at 10. In response to the pandemic, all five states in which Ascent owns hotels or restaurants issued "Stay-at-Home" or "Shelter-in-Place" orders substantially

---

[1] In its Amended Complaint, Ascent alleged that both Wausau and Liberty are parties to the insurance contract. Doc. 17 at 2. However, the court previously rejected Ascent's claim that Liberty is a party to the contract. Doc. 44 at 8.

limiting or completely prohibiting the operation of Ascent's businesses. Doc. 17 at 10.  In addition to government closure orders, "[t]he continuous presence of the coronavirus on or around [Ascent's] premises, and/or the threat thereof, rendered the premises unsafe and unfit for their intended use." Doc. 17 at 11.  As a result of these closures, Ascent has suffered losses expected to exceed $40 million. Doc. 17 at 11.

In March 2020, Ascent submitted a claim to Defendants requesting coverage for its business interruption losses. Doc. 17 at 11.  Defendants assigned Ascent a claim number and a claims adjuster employed by Liberty. Doc. 17 at 11.  Less than 48 hours after the initial notification of a claim, the claims adjuster issued a Reservation of Rights Letter citing potential exclusions and previewing an anticipated denial of the claim. Doc. 17 at 12.  At that point, Defendants had not materially investigated the claim. Doc. 17 at 12.  Defendants issued a denial letter in April 2020. Doc. 17 at 13.

On these facts, Ascent brought claims for a declaratory judgment finding full coverage of its losses (Count I), breach of contract (Count II), bad faith (Count III), fraudulent misrepresentation (Count IV), and fraudulent suppression (Count V). Doc. 17 at 13–22.  On January 26, 2021, the court dismissed Ascent's claims for a declaratory judgment, breach of contract, bad faith, and fraudulent suppression against Liberty. Doc. 44 at 14.  The court also dismissed Ascent's claim for fraudulent suppression against Wausau. Doc. 44 at 14.  Finally, the court limited

Ascent's claim for fraudulent misrepresentation to Defendants' representation that they would promptly pay claims under the policy. Doc. 44 at 14.  Thus, Ascent's claims for a declaratory judgment, breach of contract, bad faith, and fraudulent misrepresentation remain against Wausau, and only its claim for fraudulent misrepresentation remains against Liberty.

### III.  DISCUSSION

Ascent has raised two threshold issues.  First, Ascent argues that the court should deny Defendants' motion because there are material issues of disputed fact.  Doc. 65 at 15.  According to Ascent, Defendants dispute its claims that COVID-19 was physically present on its covered properties, "that Defendants failed to perform any material investigation into the extent of the damage to [Ascent's] property," and that "governmental closure orders required [Ascent] to halt its ordinary operations."  Doc. 65 at 15–17.  However, factual disputes are not relevant at this stage of the litigation because the court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff" when deciding a motion for judgment on the pleadings. *Johnson v. Midland Funding, LLC*, 823 F.3d 1334, 1337 (11th Cir. 2016).  Accordingly, the court accepts as true that COVID-19 was physically present on Ascent's covered properties, that Defendants did not investigate the extent of Ascent's damage, and that government orders required Ascent to shut down its operations.

Second, Ascent argues that the policy's New York choice-of-law provision is unenforceable and Georgia law should control the breach of contract claim. Doc. 65 at 10. This is the first time Ascent has advanced this argument despite Liberty's reliance on the choice-of-law provision in its motion to dismiss. Doc. 26 at 6. In its response to the motion to dismiss, Ascent acknowledged that the policy included a choice-of-law provision, assumed "*arguendo* that this provision is enforceable," and did not suggest that it was unenforceable. Doc. 38 at 13–14. The court finds that Ascent waived this issue by failing to contest the choice-of-law provision in its response to Liberty's motion to dismiss. *See Mitchell Co. v. Campus*, 2008 WL 11394375, at *3 (S.D. Ala. June 4, 2008) (citing *Floyd v. Home Depot U.S.A.*, 274 F. App'x 763, 765 (11th Cir. 2008)). Nevertheless, as discussed below, Ascent's breach of contract claim is due for dismissal under either New York or Georgia law.

**A.   Policy Coverage**

The insured bears the initial burden to show that the policy covers its losses. *Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 7 (N.Y. App. Div. 2002); *Ga. Farm Bureau Mut. Ins. Co. v. Hall County*, 586 S.E.2d 715, 717 (Ga. Ct. App. 2003). Ascent argues that government closure orders and the presence of COVID-19 in its covered properties caused "physical loss or damage" and trigger coverage under the policy. Doc. 65 at 20. The phrase "physical loss or damage" is not defined in the policy. Doc. 65 at 18. But Ascent argues that the plain and

ordinary meaning of the words includes damage to property from the presence of a virus and loss of the use of that property because of a pandemic or government closure. Doc. 65 at 19.

For their part, Defendants rely on numerous decisions across the country that have found no coverage under similar policies for losses due to the COVID-19 pandemic. *See* Doc. 52 at 28–30.  Relying on *Roundabout*, 751 N.Y.S.2d at 4, New York courts consistently have found that "'direct physical loss or damage' unambiguously requires some form of actual, physical damage." *Tappo of Buffalo, LLC v. Erie Ins. Co.*, 2020 WL 7867553, at *3 (W.D.N.Y. Dec. 29, 2020); *6593 Weighlock Drive, LLC v. Springhill SMC Corp.*, 2021 WL 1419049, at *5 (N.Y. Sup. Ct. Apr. 13, 2021); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 2020 WL 7360252, at *2 (S.D.N.Y. Dec. 15, 2020); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 330–31 (S.D.N.Y. 2014).  In *Roundabout*, 751 N.Y.S.2d at 5, the insurance policy covered business interruptions that occurred "as a direct and sole result of loss of, damage to or destruction of property."  An additional clause provided insurance against "all risks of direct physical loss or damage to the property." *Id.*  "Reading these provisions together, the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property." *Id.* at 8.  The court also rejected the argument that the phrase "loss of" must include "loss of use of." *Id.* at

7

8. Based on its reading of the policy, the *Roundabout* court found no coverage for the insured's losses due to a government closure order prompted by damage to a nearby building. *Id.* at 9–10.  Similarly, Georgia caselaw establishes that "direct physical loss or damage" requires an actual, physical change in insured property, a condition not met by COVID-19 particles that adhere to but do not alter physical surfaces. *Karmel Davis & Assocs., Attorneys-at-Law, LLC v. Hartford Fin. Servs. Group, Inc.*, 2021 WL 420372, at *4 (N.D. Ga. Jan. 26, 2021) (citing *AFLAC, Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317 (Ga. Ct. App. 2003)).

The plain meaning of the phrase "direct physical loss or damage" comports with the findings of the New York and Georgia courts.  "Loss" is defined as "ruin, destruction," *Loss*, Oxford English Dictionary (2021), available at www.oed.com ("Oxford English Dictionary"), and "damage" as "[i]njury, harm; *esp.* physical injury to a thing, such as impairs its value or usefulness." *Damage*, Oxford English Dictionary, *supra*.  As Ascent correctly notes, the court must read these terms as having distinct meanings because otherwise one of the terms would be superfluous. *See Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012); *Harris Cnty. v. Penton*, 439 S.E.2d 729, 730 (Ga. Ct. App. 1993).  The court therefore interprets "damage" to be a lesser harm than "loss," which results in total ruin. *See The Woolworth LLC v. The Cincinnati Ins. Co.*, 2021 WL 1424356, at *4 (N.D. Ala. Apr. 15, 2021).  Although the terms vary in the degree of harm they describe, they

8

share the same essential character. And within the context of this policy, both loss and damage to property must be "physical," which is defined as "of or relating to matter or the material world; natural; tangible, concrete." *Physical*, Oxford English Dictionary, *supra*. While COVID-19 particles are a physical manifestation of the virus, Ascent has not alleged that they caused physical harm to property within the meaning of the policy.

The entirety of the policy language confirms that direct physical loss or damage requires an actual physical change to property that COVID-19 particles cannot cause. For example, the policy covers losses only during the "Period of Liability," which begins when the physical loss or damage occurs and ends when the property could be "[r]epaired or replaced; and [m]ade ready for operations." Doc. 17-1 at 42. This definition leads to the conclusion that direct physical loss must be a loss requiring repair or replacement. Cleaning and disinfecting are all that is required for restoring the usefulness of a building contaminated by COVID-19. *See R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*, 2021 WL 686864, at \*3 (M.D. Fla. Jan. 22, 2021) ("COVID-19 does not impact physical structures, other than to require additional cleaning and sanitizing of those structures."). Thus, the question is whether Ascent can shoehorn cleaning or disinfecting into the definitions of repair and replace. "Replace" is defined as "[t]o provide a substitute for; to put an equivalent in place of (something lost, broken, etc.)." *Replace*, Oxford English

9

Dictionary, *supra*. Cleaning and disinfecting do not fall within the scope of this definition under any reasonable interpretation of the terms. "Repair" is defined as "[t]o restore (a damaged, worn, or faulty object or structure) to good or proper condition by replacing or fixing parts; to mend, fix." *Repair*, Oxford English Dictionary, *supra*. Cleaning and disinfecting do not involve replacing or fixing parts, and a structure is not faulty because it has a contaminated surface that can be decontaminated by cleaning and disinfecting.

The Eleventh Circuit's holding in *Mama Jo's, Incorporated v. Sparta Insurance Company*, 823 F. App'x 868 (11th Cir. 2020), illustrates the distinction between cleaning and repairing. In *Mama Jo's*, dust and debris entered a restaurant due to nearby road construction, causing a slowdown in the restaurant's business. *Id.* at 871. The restaurant had an insurance policy covering "direct physical loss of or damage to Covered Property." *Id.* Applying Florida law, the Eleventh Circuit interpreted the phrase "direct physical loss" to require "actual" loss. *Id.* at 879 (citations omitted). The court concluded that the dust and debris did not cause an actual loss because the property needed only thorough cleaning to restore it to its previous condition. *Id.* Like dust and debris, this court concludes that a viral contaminant can be purged with cleaning and disinfecting and does not create the type of actual loss or damage contemplated by the policy's definition of "Period of Liability."

10

Ascent's two alleged reasons for its closures—government closure orders and viral contamination—do not cause actual physical change to property. Government closure orders do not tangibly or materially alter Ascent's property. *See Hillcrest Optical v. Cont'l Cas. Co.*, 2020 WL 6163142, at *7 (S.D. Ala. Oct. 21, 2020) ("Plaintiff's loss of usability did not result from an immediate occurrence which tangibly altered its property—the Order did not immediately cause some sort of tangible alteration to Plaintiff's office."). And viral contamination does not constitute direct physical loss or damage or amount to harm to property that requires repair or replacement. At most, the presence of COVID-19 would require Ascent to clean and disinfect its locations. For these reasons, Ascent has not met its burden to establish coverage under the policy. Moreover, any amendment to Ascent's complaint would be futile because the court finds as a matter of law that the policy does not cover damage caused by COVID-19, either directly or indirectly. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (holding that amending a complaint "is futile when the complaint as amended would still be properly dismissed").

**B.    Contamination Exclusion**

Even if Ascent could show that the presence of COVID-19 in its properties constituted direct physical loss or damage, the policy's Contamination Exclusion bars coverage. The Contamination Exclusion provides that the policy does not cover

11

losses resulting from contamination, which is the "condition of property that results from a contaminant." Doc. 17-1 at 27. And a virus is a type of contaminant identified in the policy. Doc. 17-1 at 64. As Ascent has alleged, the presence of the COVID-19 virus on its properties caused "the loss of use of [its] property." Doc. 17 at 10. Thus, Ascent's allegations establish the applicability of the Contamination Exclusion.

Each of Ascent's arguments to the contrary fails. In the context of the entire list of terms used to define "contaminant," Ascent argues that the intent of the Contamination Exclusion is to exclude coverage "for traditional environmental or industrial pollution or contamination losses, not losses resulting from a viral pandemic." Doc. 65 at 37–38. Ascent's argument implicitly relies on the canon of construction known as *noscitur a sociis*, which provides that when several words "are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." Antonin Scalia & Bryan A. Garner, *Reading Law* 195 (2012); *see also People for Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1147 (11th Cir. 2018). But any definition of "virus" that somehow carves out COVID-19 is not a permissible meaning. This court does not accept Ascent's invitation to engage in the type of mental gymnastics that would permit a finding that the COVID-19 coronavirus is not a virus within the meaning of the Contaminant Exclusion.

Ascent also points out that the Contamination Exclusion does not apply if the contamination itself resulted from a covered loss. *See* Doc. 17-1 at 27.  Ascent argues that the contamination was caused by a pandemic, which is not an excluded cause of loss. Doc. 65 at 39.  However, "the COVID-19 pandemic is simply a large-scale outbreak of a virus." *Michael J. Redenburg, Esq. PC v. Midvale Indemnity Co.*, 2021 WL 276655, at *8 n.5 (S.D.N.Y. Jan. 27, 2021).  For this reason, the court rejects Ascent's attempt to distinguish the pandemic and COVID-19.  The contamination was caused by the presence of COVID-19, which is not a covered loss.

Finally, Ascent argues that Defendants failed to adequately investigate its claims and therefore cannot show that there was actual contamination. Doc. 65 at 39–40.  But Ascent has made a threshold showing itself by pleading that COVID-19 was actually present in its properties (Doc. 17 at 11), and the court takes this assertion as true for purposes of deciding the instant motion.  Therefore, to the extent Ascent seeks coverage for losses resulting from the presence of COVID-19 in its properties, the Contamination Exclusion applies.[2]  Because there is no coverage under the policy, Ascent cannot show a breach of contract, and Counts I and II against Wausau are due to be dismissed.

---

[2] To the extent Ascent alleges that its losses result from government closure orders, its claims fail for the reasons discussed above.

## C. Tort Claims

Ascent's remaining tort claims also are due to be dismissed. As this court has previously decided, Georgia law governs Ascent's bad faith claim. Doc. 44 at 8. Under Georgia law, a plaintiff can only bring a bad faith claim "[i]n the event of a loss which is covered by a policy of insurance." Ga. Code Ann. § 33-4-6. Because this court finds as a matter of law that Ascent's losses are not covered by the policy, Ascent cannot show bad faith, and Count III against Wausau is due to be dismissed.

Ascent's final remaining tort claim is for fraudulent misrepresentation and is limited to Defendants' alleged misrepresentation that they would promptly pay a claim in accordance with the policy. Doc. 44 at 10–11. The court also has determined that Georgia law applies to Ascent's fraud claim. Doc. 44 at 9. The first element of a fraudulent misrepresentation claim under Georgia law is a showing that the defendant made false representations. *Clemons v. Delta Airlines, Inc.*, 790 S.E.2d 814, 817 (Ga. Ct. App. 2016). The court's finding that Defendants rightfully denied coverage necessarily means Ascent has not identified a representation that was false or that did not align with Defendants' conduct. Ascent therefore cannot meet the elements of fraudulent misrepresentation, and Count IV against Liberty and Wausau must be dismissed.

## IV. CONCLUSION

For these reasons, Defendants' Motion for Judgment on the Pleadings (Doc.

51) is due to be granted and Ascent's claims are due to be dismissed with prejudice.

A final judgment will be entered.

    DONE and ORDERED on May 5, 2021.

                                    _____
                                    GRAY M. BORDEN
                                    UNITED STATES MAGISTRATE JUDGE